UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:16-cr-2-JMS-TAB-14 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| DONALD HINKLE | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00002-JMS-TAB |
| | ) | |
| DONALD HINKLE, | ) | -14 |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Donald Hinkle filed a pro se motion for compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A).[1] He asks the Court to order his immediate release. For the reasons explained below, his motion, dkt [898], is **DENIED**.[2]

## I.      Background

In May 2017, Mr. Hinkle pled guilty to one count of possession of ammunition by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Dkts. 705, 708. In pleading

---

[1] Mr. Hinkle's initial motion mentions the CARES Act as an alternative basis for relief. Dkt. 898. To the extent Mr. Hinkle seeks to serve out the rest of his sentence on home confinement under the CARES Act, the Court lacks authority to grant such relief. Pursuant to statute, the location of a prisoner's confinement is the sole province of Bureau of Prisons, and its placement decisions are "not reviewable by any court." 18 U.S.C. § 3621(b). The Court therefore does not have the authority to order the remainder of Mr. Hinkle's sentence to be served on home confinement. *United States v. Council*, No. 1:14-CR-14-5, 2020 WL 3097461, at *7 (N.D. Ind. June 11, 2020); *United States v. Neeley*, No. 1:14-cr-00096, 2020 WL 1956126, at *2 (S.D. Ind. Apr. 23, 2020). In addition, the CARES Act expands the powers of the Attorney General and the Director of the Bureau of Prisons to place inmates on home confinement, but it does not expand the courts' ability to do so. *See* Pub. L. No. 116-136, 134 Stat. 281, 516 (2020) (CARES Act § 12003(b)(2)). Instead, consistent with § 3582(c)(1)(A), the Court may only reduce Mr. Hinkle's sentence of imprisonment and impose home confinement as a condition of any supervised release.

[2] In his reply, Mr. Hinkle asked the Court to appoint counsel to represent him. Dkt. 919. For the reasons stated in this Order, the Court finds that interests of justice do not support appointing counsel to represent Mr. Hinkle, and his request for appointment of counsel is **denied**.

guilty, Mr. Hinkle stipulated that he bought controlled substances and that, when law enforcement officers subsequently searched his residence, they found 4 digital scales in the kitchen, 23 grams of fentanyl in the bedroom, and ammunition in a magazine in the bedroom. Dkt. 617 at 6–7. He also stipulated that he had two previous felony convictions for dealing marijuana and one previous felony conviction for robbery. *Id.* at 7. The Court sentenced Mr. Hinkle to 120 months of imprisonment and 2 years of supervised release. Dkt. 708.

Mr. Hinkle is 40 years old. *See* bop.gov/inmateloc (last visited Jan. 14, 2021). He is currently incarcerated at the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute"). As of January 14, 2021, the BOP reports 22 active cases of COVID-19 among inmates and 18 cases among staff at FCI Terre Haute; it also reports that 420 inmates and 99 staff members at FCI Terre Haute have recovered from the virus and that 2 inmates at FCI Terre Haute have died from the virus. *See* https://www.bop.gov/coronavirus/ (last visited Jan. 14, 2021).

Mr. Hinkle has served a little less than 5 years of his sentence. The Bureau of Prisons ("BOP") lists Mr. Hinkle's projected release date (with good-time credits) as August 15, 2024. https://www.bop.gov/inmateloc/ (last visited Jan. 14, 2021).

On June 17, 2020, Mr. Hinkle filed a pro se motion seeking compassionate release. Dkt. 898. The United States responded in opposition, dkt. 911, and Mr. Hinkle replied, dkt. 919. Thus, the motion for compassionate release is now ripe for review.

## II.   Discussion

Mr. Hinkle seeks immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Dkts. 898, 919. Mr. Hinkle argues that he has medical conditions (atrial fibrillation and asthma) that increase his risk for experiencing severe symptoms if he contracts COVID-19 and that the virus has been running rampant at the Federal Correctional

Complex in Terre Haute, Indiana. Dkts. 898, 919.  He contends that he cannot take adequate measures to protect himself from the virus. *Id.* He notes that he has had clean conduct during his incarceration, that he has a job waiting for him if he is released, and that he has taken steps toward rehabilitation during his incarceration, including earning his GED and CDL license. *Id.* In response, the United States concedes that Mr. Hinkle exhausted his administrative remedies as required by 3582(c)(1)(A). Dkt. 911. Nonetheless, the United States contends that Mr. Hinkle has not shown extraordinary and compelling reasons warranting a sentence reduction. *Id.* It also argues that the sentencing factors in § 3553(a) factors do not favor release. *Id.*

The general rule is that sentences imposed in federal criminal cases are final and may not be modified.  18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018).  The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his

sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling

reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

Mr. Hinkle does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him. Dkts. 891, 919  Thus, the question is whether the Court should exercise its broad discretion to find an extraordinary and compelling reason warranting release in this case. The Court declines to do so.

The risk that Mr. Hinkle faces from the COVID-19 pandemic is not an extraordinary and compelling reason to release him. While the Court sympathizes with Mr. Hinkle's fear of contracting the virus, the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD01, dkt. 33 (S.D. Ind. Aug. 12, 2020) (concluding that the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction).

Moderate-to-severe asthma has been identified by the Centers for Disease Control (CDC) as possibly placing individuals at increased risk for serious complications from COVID-19 infection.  *See*  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 14, 2021). Mr. Hinkle claims that he has asthma, *see* dkt. 919 at 5, and his mother and wife told the U.S. Probation Officer that he had asthma prior to his sentencing, *see* dkt. 690 at 16. However, his medical records for August 2017 to March 2020 show

that—during that time period—he has not complained of any symptoms of asthma and has not received any treatment or medication for asthma. *See generally* dkt. 912. Thus, Mr. Hinkle has not shown that he currently suffers from moderate-to-severe asthma that would increase his risk of severe COVID-19 symptoms. *See* https://www.uofmhealth.org/health-library/hw161158 (last visited Jan. 14, 2021) (summarizing symptoms of moderate and severe asthma; stating that asthma is considered moderate if any of the following are true of the patient's condition without treatment: daily symptoms or daily inhaler use; symptoms interfere with daily activities; nighttime symptoms occur more than one time a week but do not happen every day; lung function tests are abnormal (more than 60% to less than 80% of expected value) and PEF varies more than 30% from morning to afternoon).

Likewise, the CDC has recognized that certain heart conditions (heart failure, coronary artery disease, cardiomyopathies, and pulmonary hypertension) increase an person's risk for experiencing severe COVID-19 symptoms and that other cardiovascular or cerebrovascular disease (such as hypertension or stroke) might increase the risk of severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#heart-conditions (last visited Jan. 14, 2021). Mr. Hinkle has not presented evidence that he suffers from any of the heart conditions specified by the CDC as potentially increasing the risk for severe COVID-19 symptoms. Mr. Hinkle claims that he has atrial fibrillation,[3] *see* 898 at 1, but the CDC has not identified atrial fibrillation as a condition that increases or may increase the risk of severe COVID-19 symptoms.

---

[3] Atrial fibrillation is an irregular and often rapid heart rate that can increase the risk of strokes, heart failure, and other heart-related complications. *See* https://www.mayoclinic.org/diseases-conditions/atrial-fibrillation/symptoms-causes/syc-20350624 (last visited Jan. 14, 2021).

Moreover, Mr. Hinkle has not shown that he currently suffers from atrial fibrillation. Instead, his medical records show that he reported to BOP medical workers that he suffered from atrial fibrillation following a car accident in 2015 and that, after 30 days of medication, he had no further problems. *See, e.g.*, dkt. 912 at 23; *see also* dkt. 690 at 16 (telling U.S. Probation Office in 2017 that he was in good physical health but that he experienced atrial fibrillation following a car accident about a year previously that occurred while he was high on heroin; stating that he was subjected to monitoring for several days before he was released with a thirty-day prescription for an unknown medication; stating that he did not refill the prescription and has not sought treatment for the condition since that time). His BOP medical records list atrial fibrillation as a "resolved" condition and note that it appears to have been associated with his prior illegal drug use. *Id.* at 129, 156. On May 7, 2019, Mr. Hinkle denied any episodes of palpitations, chest pain, or shortness of breath. *Id.* at 104. On February 7, 2020, Mr. Hinkle also denied any chest pain, shortness of breath, or any activity-related issues. *Id.* at 129. An examination revealed normal rate and rhythm of the heart. *Id.* at 130. In March 2020, BOP medical staff ordered an echocardiogram for Mr. Hinkle. *Id.* at 124. The only abnormal findings were trace tricuspid regurgitation[4] and trace mitral regurgitation.[5] *Id.* at 165–66. As of January 22, 2020, Mr. Hinkle has no physical or work restrictions. *Id.* at 158. In short, no record evidence supports Mr. Hinkle's claim that he currently suffers from atrial fibrillation. While he does appear to have trace tricuspid regurgitation and trace

---

[4] "Tricuspid valve regurgitation is a condition in which the valve between the two right heart chambers (right ventricle and right atrium) doesn't close properly . . . . If your condition is mild, you may not need treatment. Your doctor may just monitor your condition." *See* https://www.mayoclinic.org/diseases-conditions/tricuspid-valve-regurgitation/symptoms-causes/syc-20350168 (last visited Jan. 14, 2021).

[5] "Mitral valve regurgitation — also called mitral regurgitation, mitral insufficiency or mitral incompetence — is a condition in which your heart's mitral valve doesn't close tightly, allowing blood to flow backward in your heart . . . For mild leakage, treatment is usually not necessary." *See* https://www.mayoclinic.org/diseases-conditions/mitral-valve-regurgitation/symptoms-causes/syc-20350178 (last visited Jan. 14, 2021).

mitral regurgitation, the CDC has not identified these mild conditions as among those that might increase the risk of severe COVID-19 symptoms, and Mr. Hinkle has offered no argument or evidence to suggest that they do.

As a result, there is no evidence that Mr. Hinkle's history of asthma and heart conditions put him at increased risk of suffering severe symptoms if he contracts COVID-19. And this Court has consistently denied motions for compassionate release from defendants—like Mr. Hinkle— who are not at an increased risk of developing severe symptoms if they contract COVID-19, even when they are incarcerated in a "hotspot" for COVID-19 infections. *See United States v. Dyson*, 2020 WL 3440335, at *3 (S.D. Ind. June 22, 2020) (collecting cases).

To the extent Mr. Hinkle complains about the manner in which the BOP has handled the COVID-19 pandemic at FCI Terre Haute, *see, e.g.*, dkt. 898 at 2, such complaints could conceivably form the basis for a civil suit, but they do not represent a reason to release him from custody more than 3 years early.

Finally, Mr. Hinkle is to be commended for not having a disciplinary write up in his nearly five years of incarceration and for making progress toward rehabilitation by, among other things, earning his GED and CDL license. However, rehabilitation alone cannot be an extraordinary and compelling reason warranting a sentence reduction. *See* 28 U.S.C. § 994(t).

Given the Court's determination that Mr. Hinkle has not shown extraordinary and compelling reasons to justify his release, the Court need not determine whether Mr. Hinkle would be a danger to the community if release and whether the § 3553(a) factors favor release.

**III.**    **Conclusion**

For the reasons stated above, Mr. Hinkle's motion for compassionate release, dkt. [898], is

**denied**.

**IT IS SO ORDERED.**

Date: 1/15/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

Donald Hinkle
Reg. No. 15170-028
FCI Terre Haute
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808